**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X          **03 CV 5810 (NG) (MDG)**
**ROSA ARENES and ANDREA CUELLO,**

                    **Plaintiffs,**

     **-against-**          **OPINION AND ORDER**

**MERCEDES BENZ CREDIT CORPORATION**
**and CAROL G. ABADY,**

                    **Defendants.**
------------------------------------------------------------------X

**GERSHON, United States District Judge:**

Plaintiffs Rosa Arenes and Andrea Cuello commenced this action on November 18, 2003 to recover damages for personal injuries sustained in a car accident (the "Accident") that occurred on July 8, 2002. On February 27, 2004, Daimler Chrysler Services North America LLC ("Daimler Chrysler"), as successor in interest, following a corporate merger, to defendant Mercedes Benz Credit Corp., filed an answer to the complaint, which asserted a cross-claim against defendant Carol G. Abady for indemnification. Ms. Abady filed an answer to the complaint on April 18, 2004. Discovery, which took place under the supervision of Magistrate Judge Marilyn D. Go, has been completed. Daimler Chrysler now moves for summary judgment on two grounds: (1) plaintiffs' respective personal injuries do not meet the statutory threshold for recovery under New York's No-Fault Law, and (2) defendant Abady's negligence was the sole cause of the Accident. Ms. Abady joins Daimler Chrysler's motion on the first ground, but opposes it on the second ground. For the reasons set forth below, defendants' motions for summary judgment are granted with respect to plaintiffs' claims, and the complaint is dismissed. Further, Daimler Chrysler's cross-claim is

dismissed as moot.

## FACTS

Unless otherwise noted, the following facts are not in dispute:

The Accident at issue in this case was a three car collision on the Staten Island Expressway. At the time of the Accident, plaintiffs were passengers in a 1993 Ford driven by Ms. Arenes's son, Richard Sosa, and owned by Sosa Associate, Inc. ("Plaintiffs' Car"). Steven P. McKenna was driving alone in a 2002 Mercedes owned by Daimler Chrysler ("Daimler Chrysler's Car"). Ms. Abady was driving alone in a 1994 BMW that she owned ("Abady's Car"). All three cars were traveling westbound, in succession, in the left lane. Plaintiffs' Car was in front, Daimler Chrysler's Car was in the middle, and Abady's Car was in the rear. The Accident occurred when, in heavy traffic conditions, Daimler Chrysler's Car came to a stop. Abady's Car rear-ended Daimler Chrysler's Car, propelling it into Plaintiffs' Car.

Plaintiffs' Car sustained damage to its rear end and had to be towed from the scene; it was considered a total loss by its owner's insurance company. Abady's Car sustained damage to its front end and also had to be towed from the scene; it was subsequently repaired and is back in use by Ms. Abady. The record does not indicate what, if any, damage was sustained by Daimler Chrysler's Car. In an affidavit, Mr. McKenna states that Daimler Chrysler's Car was equipped with air bags, but they did not deploy during the Accident. He was able to drive the car away from the scene.

At the time of the Accident, Ms. Arenes was 51 years old and unemployed. She testified that she remains unemployed at present, but noted that she does provide child care for a four year old girl who lives in her neighborhood, for nominal compensation. When the Accident took place, she was

sitting in the front passenger seat and wearing a seat belt. She sustained injuries to her back and chest, which are discussed in greater detail below. Ms. Cuello was 25 years old at the time of the Accident. She was employed part-time as an office cleaner, earning approximately $500 per month; she remains employed in the same capacity at present. When the Accident took place, she was sitting in the back seat, on the passenger side, and wearing a seat belt. She sustained injuries to her back and right knee, which are discussed in greater detail below.

Neither Ms. Arenes nor Ms. Cuello received medical attention at the scene of the Accident. Approximately one week after the Accident, both plaintiffs sought medical treatment from Pain Management & Rehabilitation, P.C. Each was initially examined by Yelena Itskhoki, M.D., and referred to Jay Garsman, M.D., for MRI tests. On Dr. Itskhoki's advice, they underwent a course of physical therapy. They attended physical therapy sessions together at Pain Management & Rehabilitation, P.C., two to three times per week for approximately seven months. At the end of that period, Dr. Itskhoki concluded that plaintiffs' respective back injuries were permanent and that further treatment would not result in any additional improvement. Neither plaintiff received any further medical treatment related to injuries sustained in the Accident prior to the commencement of this action on November 18, 2003.

In support of its motion, Daimler Chrysler submits affirmations and reports from A. Robert Tantleff, M.D., a radiologist, and Robert S. April, M.D., a neurologist. Ms. Abady also submits the reports of Dr. April, as well as reports from Sheldon P. Feit, M.D., a radiologist. Dr. Feit's reports, however, are neither sworn nor subscribed to under penalties of perjury; as a result, they do not constitute competent evidence and will not be considered by the court. *See Baron v. Murray*, 268 A.D.2d 495, 495 (2d Dep't 2000).

Dr. April examined both plaintiffs on October 27, 2004 and reviewed their respective medical records, exclusive of the MRI films taken shortly after the Accident. Neither his examination of Ms. Arenes nor his examination of Ms. Cuello yielded objective neurological findings. With respect to both plaintiffs, Dr. April concluded that there was no indication of any neurological injury related to the Accident.

On June 16, 2004, Dr. Tantleff performed an independent radiological review of plaintiffs' MRI films. Concerning Ms. Arenes, he identified various findings with respect to both the cervical and lumbar spines, but concluded that they were the result of a pre-existing degenerative condition. His report states:

> The findings are consistent with the individual's age. The findings are a chronic longstanding process requiring years to develop as presented and are not causally related with the individual's traumatic event that occurred on 7/8/02, approximately six weeks prior to the MRI examination as the findings are consistent with wear-and-tear of the normal aging process. Furthermore, it is improbable that a medically uncomplicated traumatic event would be causal of multilevel discal abnormalities in the cervical and lumbar spine. Additionally, there is no evidence of acute traumatic change to the cervical spine.

Tantleff Rep. (Arenes) at 3, annexed to Tantleff Aff. (Arenes).[1] Overall, he stated with a reasonable degree of medical certainty that he could find "no objective medical evidence that ROSA ARENES has any residual medical disability from the motor vehicle accident of July 8, 2002." Tantleff Aff. (Arenes) ¶ 5a.

Concerning Ms. Cuello, Dr. Tantleff identified multiple disc bulges in both the cervical and

---

[1]Dr. Tantleff detailed his findings with respect to each plaintiff in separate documents. For ease of reference, the affirmation and report of Dr. Tantleff concerning Ms. Arenes shall be referred to, respectively, as Tantleff Aff. (Arenes) and Tantleff Rep. (Arenes). The affirmation and report of Dr. Tantleff concerning Ms. Cuello shall be referred to, respectively, as Tantleff Aff. (Cuello) and Tantleff Rep. (Cuello). The same convention will be used to identify the affirmations and reports of the other doctors who examined plaintiffs.

lumbar spines, but again concluded that they were the result of a pre-existing degenerative condition.

His report states:

> Bulging of a disc is due to desiccation and degeneration and develops over the course of many years. Essentially, this is due to normal wear-and-tear of the aging process. Acute traumatic injuries such as falls or motor vehicle accidents do not cause bulging. Please note that 35% of asymptomatic individuals aged 20 to 39 manifest disc bulges on CAT Scans or MRI examination. By 60, nearly 100% of asymptomatic individuals display disc bulges.

Tantleff Rep. (Cuello) at 2 (footnote omitted). Overall, he stated with a reasonable degree of medical certainty that he could find "no objective medical evidence that ANDREA CUELLO has any residual medical disability from the motor vehicle accident of July 8, 2002." Tantleff Aff. (Cuello) ¶ 5a.

In opposition to defendants' motions, plaintiffs submitted affirmations and reports from Dr. Itskhoki and Dr. Garsman. Plaintiffs also submitted reports from Larisa Likver, M.D., a neurologist. Dr. Likver's reports, however, are neither sworn nor subscribed to under penalties of perjury; as a result, they do not constitute competent evidence and will not be considered by the court. *See Baron*, 268 A.D. at 495.

Following their treatment in 2002-2003, described above, plaintiffs were again examined by Dr. Itskhoki on March 30, 2005. Using a protractor, Dr. Itskhoki measured Ms. Arenes's range of motion and detected numerical deficiencies in her extension and flexion of the cervical and lumbar spines; the deficiencies were less severe than those detected during Ms. Arenes's initial examination on July 17, 2002. In addition, tenderness and spasm were perceived in both spinal regions on palpation. Dr. Itskhoki states that, as a result of her injuries, "Ms. Arenes is substantially impaired in such things as prolonged sitting, prolonged standing, turning her neck, bending, lifting heavy objects or engaging in sports or athletic activities." Itskhoki Aff. (Arenes) ¶ 19. She concludes, with

a reasonable degree of medical certainty, that Ms. Arenes's injuries are a result of the Accident. In arriving at this conclusion, Dr. Itskhoki relies, in part, on the results of Ms. Arenes's MRI tests. While Dr. Itskhoki states that she reviewed the reports prepared by Dr. Garsman concerning Ms. Arenes's MRI films, she does not indicate whether she herself reviewed those films. *See* Itskhoki Aff. (Arenes) ¶¶ 9, 16, 17, 20.

Dr. Garsman reviewed Ms. Arenes's MRI films on August 20, 2002 and diagnosed the following injuries: a central disc herniation at C2-3, a broad-based disc herniation with left foraminal compromise at C3-4, broad-based disc herniations at C4-C6, reversal of the normal cervical lordotic curvature consistent with muscle spasms, a central disc protrusion at L1-2, a disc bulge at L5-S1, hernangioma at L1, and straightening of the normal lumbosacral lordotic curve consistent with muscle spasm. He did not make any findings with respect to the cause of Ms. Arenes's injuries.

At her deposition, Ms. Arenas testified that, during the seven months following the Accident, she did not leave her home except to go to medical appointments. She also testified that she has pain in her neck and back, it hurts when she bends down, she has trouble sleeping, she has difficulty lifting heavy objects, and she has difficulty picking up her grandchild. She takes Tylenol periodically for her pain.

Although Dr. Itskhoki initially measured Ms. Cuello's range of motion on July 17, 2002 and detected numerical deficiencies in her extension and flexion of the cervical and lumbar spines, she does not report performing any range of motion tests on Ms. Cuello during the March 30, 2005 examination. Dr. Itskhoki does report that, during the March 30, 2005 examination, she perceived muscle spasm in the paracervical musculature on palpation. Dr. Itskhoki states that, as a result of

6

her injuries, "Ms. Cuello is substantially impaired in such things as prolonged sitting, prolonged standing, turning her neck, bending, lifting heavy objects or engaging in sports or athletic activities." Itskhoki Aff. (Cuello) ¶ 18. She concludes, with a reasonable degree of medical certainty, that Ms. Cuello's injuries are a result of the Accident. As was the case with Ms. Arenes, in arriving at this conclusion, Dr. Itskhoki relies, in part, on the results of Ms. Cuello's MRI tests. While Dr. Itskhoki states that she reviewed the reports prepared by Dr. Garsman concerning Ms. Cuello's MRI films, again she does not indicate whether she herself reviewed those films. *See* Itskhoki Aff. (Cuello) ¶¶ 9, 15, 16, 19.

Dr. Garsman reviewed Ms. Cuello's MRI films on August 20, 2002 and diagnosed her with the following injuries: a broad based disc herniation at C5-6, disc bulges at C2-3 and C3-4, straightening of the normal cervical lordotic curvature consistent with muscle spasms, a right paracentral disc protrusion at L5-S1, and straightening of the normal lumbosacral lordotic curve consistent with muscle spasm. He did not make any findings with respect to the cause of Ms. Cuello's injuries.

At her deposition, Ms. Cuello testified that she missed one week of work as a result of the Accident, but was subsequently able to perform all of her job responsibilities. She has difficulty lifting and moving heavy objects and cannot bend her head backwards past a certain point. She is not taking any pain medication.

**DISCUSSION**

## I. Serious Injury

### A. General Principles of New York's No-Fault Law

In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101-5108 (McKinney 1973), commonly referred to as the "No-Fault Law," with the objective of promoting prompt resolution of injury claims, limiting cost to consumers, and alleviating unnecessary burdens on the courts. *Pommells v. Perez*, 4 N.Y.3d 566, 570-71 (2005). Pursuant to the No-Fault Law, every car owner must carry automobile insurance that will compensate injured parties for "basic economic loss," up to $50,000, occasioned by the use or operation of that vehicle in New York State, irrespective of fault. N.Y. Ins. Law §§ 5102(a), 5103; *Pommells*, 4 N.Y.3d at 571. Non-economic loss is not compensable, and no lawsuit to recover damages for such loss may be filed, unless the claimant has suffered a "serious injury." N.Y. Ins. Law § 5104(a). The No-Fault Law thus provides a compromise: prompt payment for basic economic loss to injured persons regardless of fault in exchange for a limitation on litigation to cases involving serious injury. *Pommells*, 4 N.Y.3d at 571. The statute defines "serious injury" as follows:

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

The New York Court of Appeals has rejected the contention that "the question of whether [a plaintiff] has suffered a serious injury is always a fact question for the jury." *Licari v. Elliott*. 57 N.Y.2d 230, 237 (1982).  Instead, the Court of Appeals has held that it is appropriate for a court to determine, in the first instance, whether a plaintiff's injuries meet the threshold requirement of the statute.  *Id*.  ("Since the purpose of the No-Fault Law is to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials, requiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute.") (internal citations omitted).

**B.     Summary Judgment Standard**

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury" to decide an essential issue in favor of the non-moving party.  Fed. R. Civ. P. 50(a)(1); *see id*. at 323.

When the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevail, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *id.* at 587. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial, and entitles the moving party to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In cases that are governed by the No-Fault Law, a defendant moving for summary judgment can establish a *prima facie* case that the plaintiff's injuries are not "serious" within the meaning of the statute by submitting the affidavits or affirmations of medical experts who examined the plaintiff and conclude that no objective medical findings support the plaintiff's claim. *Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992); *Grossman v. Wright*, 268 A.D.2d 79, 83-84 (2d Dep't 2000); *see Decaze v. D & D Transp.*, 2005 WL 2436222, *2 (E.D.N.Y. Sept. 30, 2005). Once the defendant does so, the burden shifts to the plaintiff to come forward with competent evidence sufficient to overcome the defendant's submissions by demonstrating that a triable issue of fact exists concerning whether the plaintiff sustained a serious injury. *Gaddy*, 79 N.Y.2d at 957; *Grossman*, 268 A.D.2d at 84; *see Decaze*, 2005 WL 2436222 at *2 . If the plaintiff fails to meet that burden, summary judgment must be granted to the defendant.

## C.      Defendants' Initial Showing

The reports of Dr. April and Dr. Tantleff, whose examinations of plaintiffs yielded no objective findings of any injury related to the Accident, are sufficient to establish a *prima facie* case that plaintiffs' injuries are not serious within the meaning of the No-Fault Law.

_____**D.**     **Plaintiff's Evidence in Response to Defendants' Initial Showing**

A plaintiff cannot meet the No-Fault Law's serious injury threshold unless the degree of the plaintiff's injuries is truly serious. *See Licari*, 57 N.Y.2d at 236 ("[O]ne of the obvious goals of the legislature's scheme of no-fault automobile reparations is to keep minor personal injury cases out of court."). The statute sets forth nine specific categories of personal injuries that constitute "serious injury." *See* N.Y. Ins. Law § 5102(d). Plaintiffs claim that the injuries they sustained in the Accident fall into three of them: (1) permanent consequential limitation of use of a body organ or member; (2) significant limitation of use of a body function or system; and (3) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

The New York Court of Appeals has repeatedly instructed trial courts to construe the three categories at issue here narrowly and in accordance with the statute's aim to limit personal injury litigation arising from automobile accidents. *See, e.g.*, *Licari*, 57 N.Y.2d at 236; *Gaddy*, 79 N.Y.2d at 957. With respect to the ninety-out-of-one-hundred-eighty-days category, the words "substantially all" must be construed to mean that the plaintiff "has been curtailed from performing his usual activities to a great extent rather than some slight curtailment," and the ninety days requirement must be taken literally. *Licari*, 57 N.Y.2d at 236. With respect to the permanent-consequential-limitation and significant-limitation categories, whether a limitation of use or function is "significant" or "consequential" involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose, and use of the body part. *Toure v. Avis Rent A Car Systems,*

*Inc.*, 98 N.Y.2d 345, 353 (2002). The adjectives "significant" and "consequential" must be construed to describe something more than a minor limitation; thus, a minor, mild, or slight limitation of use or function does not rise to the level of a serious injury. *See Licari*, 57 N.Y.2d at 236.

In a recent decision, the Court of Appeals noted that "[i]n the context of soft-tissue injuries involving complaints of pain that may be difficult to observe or quantify, deciding what is a 'serious injury' can be particularly vexing." *Pommells*, 4 N.Y.3d at 571. "Many courts have approached injuries of this sort with a well-deserved skepticism." *Id.* For this reason, objective proof of a plaintiff's injury is required to satisfy the statutory "serious injury" threshold; subjective complaints alone are not sufficient. *Toure*, 98 N.Y.2d at 350. Moreover, proof of a herniated disc, without additional objective medical evidence establishing that the accident resulted in significant physical limitations, is not alone sufficient to establish a serious injury. *Pommells*, 4 N.Y.3d at 574. To prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. *Toure*, 98 N.Y.2d at 350. An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function, or system. *Id*. Where, however, the plaintiff's evidence is limited to conclusory assertions by a treating physician that are tailored to meet statutory requirements, summary judgment should be granted for the defendant. *Lopez v. Senatore*, 65 N.Y.2d 1017, 1019 (1985).

### 1. Ninety Out of One Hundred Eighty Days

Although Ms. Arenes testified that she did not leave her home for seven months following the Accident, there is no evidence that she was *unable* to leave her home. Given that, at the time of the Accident, Ms. Arenes had recently arrived in this country, was unemployed, did not know anyone here except Mr. Sosa and Ms. Cuello, did not speak English, and did not have a driver's license, and that no evidence has been offered to demonstrate what constituted Ms. Arenes's customary daily routine prior to the Accident, no reasonable jury could conclude that she was prevented from performing substantially all of the material acts that formed her customary daily routine as a result of injuries sustained in the Accident.

Ms. Cuello went back to work one week after the Accident; therefore, she was not prevented from performing substantially all of the material acts that form her customary daily routine for at least ninety days during the one hundred eighty days following the Accident.

### 2. Permanent Consequential Limitation and Significant Limitation

With respect to Ms. Arenes, the reports of Dr. Garsman and Dr. Itskhoki are sufficient to demonstrate that a triable issue of fact exists concerning whether she sustained a permanent consequential limitation or a significant limitation of her cervical or lumbar spines. Relying on MRI films, Dr. Garsman diagnosed multiple disc herniations in Ms. Arenes's spine. Dr. Itskhoki measured plaintiff's range of motion using a protractor and concluded that the herniations caused numerical deficiencies in her extension and flexion of the cervical and lumbar spines that interfered with her ability to sit or stand for long periods, turn her neck, bend, lift heavy objects, and engage in athletic activities. In addition, both the examinations of Dr. Garsman and Dr. Itskhoki yielded

objective evidence of muscle spasms in Ms. Arenes's back.

With respect to Ms. Cuello, however, the reports of Dr. Garsman and Dr. Itskhoki are not sufficient to satisfy her burden of proof. Although Dr. Garsman diagnosed her with a disc herniation and multiple disc bulges, such a diagnosis, without additional objective medical evidence establishing physical limitations, is insufficient. *See Pommells*, 4 N.Y.3d at 574. Dr. Itskhoki "failed to set forth the objective medical test utilized at [her] *most recent examination* of the plaintiff which led [her] to conclude that the plaintiff continued to experience limitations in the functioning and use of her neck and back." *Springer v. Arthurs*, 22 A.D.3d 829, 830 (2d Dep't 2005) (emphasis added). Unlike her report of Ms. Arenes's March 30, 2005 examination, her report of Ms. Cuello's March 30, 2005 examination does not set forth the results of any range of motion tests. Accordingly, there is no objective basis for Dr. Itskhoki's conclusions. Moreover, the limitations of which Ms. Cuello complains, difficulty moving heavy objects and difficulty bending her head backwards, are not significant within the meaning of the law. She is able to perform all of her job responsibilities and does not experience pain at a level that requires her to take medication.

### E.      Contributory Factors

Even when there is objective medical proof that a plaintiff sustained a serious injury, when additional contributory factors interrupt the chain of causation between the accident and claimed injury-- such as a gap in treatment, an intervening medical problem or a pre-existing condition-- summary dismissal of the complaint may be appropriate. *Pommells*, 4 N.Y.3d at 572.

### 1. Gap in Treatment

Here, although there was a two year gap in the treatment of each plaintiff, that gap was adequately explained by Dr. Itskhoki, who stated that, after seven months of treatment, she concluded that plaintiffs' injuries were permanent and that further treatment would not result in any additional improvement. "A plaintiff need not incur the additional expense of consultation, treatment or therapy, merely to establish the seriousness or causal relation of his injury." *Id*. at 577.

### 2. Pre-Existing Condition

The reports of Dr. Tantleff constitute evidence that both plaintiffs' injuries resulted from pre-existing, degenerative conditions. Dr. Tantleff states that neither plaintiff's injuries are consistent with an acute, traumatic event such as a car accident, but, rather, both Ms. Arenes's injuries and Ms. Cuello's injuries are consistent with wear-and-tear of the normal aging process. When a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled to summary dismissal of the complaint. *Pommells*, 4 N.Y.3d at 580.

Plaintiffs do not offer any evidence to address Dr. Tantleff's assessment, despite having been given the opportunity for supplemental briefing after *Pommells* was handed down by the New York Court of Appeals during the pendency of the instant motions. Notably, Dr. Garsman's reports are silent on the issue of causation. Not only do they fail explicitly to address Dr. Tantleff's findings that plaintiffs' injuries are the result of a pre-existing, degenerative condition, they do not make any finding that either plaintiff's injuries are causally connected to the Accident. Likewise, Dr. Itskhoki

does not explicitly address Dr. Tantleff's findings that plaintiffs' injuries are the result of a pre-existing, degenerative condition. Although Dr. Itskhoki states that both plaintiffs' injuries are causally related to the Accident, she does not explain what leads her to that finding. Her conclusory statements are not sufficient to demonstrate a triable issue of fact.

In sum, Ms. Cuello has failed to submit evidence sufficient to demonstrate a triable issue of fact concerning the existence of a serious injury, and both plaintiffs have failed to submit evidence sufficient to demonstrate a triable issue of fact concerning the absence of a contributory factor. Accordingly, defendants are entitled to summary judgment on all of plaintiffs' claims.

## II.     Liability and Indemnification

In light of the foregoing, Daimler Chrysler's cross-claim for indemnification based on Ms. Abady's alleged negligence is moot.

## CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are granted with respect to plaintiffs' claims, and the complaint is dismissed. Daimler Chrysler's cross-claim is dismissed as moot. The Clerk of Court is directed to enter judgment for defendants and to close this case.

                                        **SO ORDERED.**


                                             /S/
                                        **NINA GERSHON**
                                        **United States District Judge**

Dated:  Brooklyn, New York
        June 1, 2006